The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Craig H.D. Armond presiding. Good afternoon, counsel. Our next case is 4-25-0117. People of the State of Illinois v. Malcolm Johnson. Could counsel for the appellant please state your name for the record? Good afternoon. My name is Drew Weinstein. Counsel for the appellant, could you please state your name for the record? Matthew Goldman for the people, your honor. Thank you. Counsel, you may proceed. Thank you, your honor. Good afternoon. May it please the court, counsel. As I said, my name is Drew Weinstein. I represent the appellant, Malcolm Johnson. There are five issues in this appeal. I will be planning to focus on issues 1, 2, and 5. But I will, of course, be open to questions on any of the issues should they arise. I also apologize in advance because I have a cough today, so I may occasionally need a moment to recover my voice. Issue 1 concerns the jury instruction given on Mr. Johnson's charge for obstruction of justice. That instruction given in the trial was missing an essential element, namely that Mr. Johnson materially interfered with the administration of justice. Under the Supreme Court's decision in Cassler, it extended a previous case, Comage, which had similarly found that that was a necessary element to the entirety of the statute. Cassler also made clear that on remand, a change in the jury instructions would be required. Given that Cassler was decided years before Mr. Johnson's trial, all the parties in the case should have been well aware of this change of law, that this was an essential element, and that it needed to be a part of the jury instructions. Also supporting this, last year, the instructions were changed. IPIs 2219, 2219A, and 2020 were changed to now include the decision of Cassler. They now include this element. Based on that, that the instruction given was incorrect, Mr. Johnson is entitled to have his conviction reversed and remanded for a new trial. I also say that this charge can't be separated out from the other charges because it occurred as a series of events that were all part of the same course of conduct. Him ending up in the hospital, the alleged attempt to conceal the evidence, the interrelation between how he got to the hospital, how that relates to other things, those are all related and impacted how the evidence was presented in trial. Furthermore, the state in the closing argument made a specific argument about Mr. Johnson's consciousness of guilt, that why would he have tried to conceal this evidence if he wasn't guilty on these other charges as well. Thus, it would be unfair to allow the state to argue at trial that, okay, he has consciousness of guilt when the state was not required to prove all the elements of that offense, but then on remand only allow Mr. Johnson to challenge that one charge when that charge was interrelated to the other charges that impacted the entire course of the trial. Make sure I understand what you're saying. Are you saying that because language of an instruction that wasn't required at the time wasn't included, he's supposed to somehow get the remand on a murder based on the class four obstruction of justice? Well, I would disagree. It was required at the time because Kassler had been on the books for multiple years. It wasn't required. Kassler didn't say that you have to put this. The Supreme Court did not say nor did any case since Kassler up until the time the instructions were amended say that they had to be included in the instruction. There was a change and it was subsequently included in the instruction. Did Kassler say that all cases are to include this language from here on out? Well, Kassler specifically said that. Yes or no? I'm trying to answer the question, Your Honor. And Kassler, they said that it was going to change. The jury instructions needed to be changed on remand. And Kassler announced that this was a new announcement of law. But it wasn't. The jury instructions for that case needed to be changed on remand. Right. Because Kassler was saying we have now changed the law and the state wouldn't have known that this was the new law. Here's my question. We did not have a Supreme Court statement that this instruction must be changed in all obstructing justice cases from here on out. That happens later. I guess what I'm just trying to figure out is you're somehow trying to work this hundred and twenty three year sentence on a murder attempt, first degree murder for a remand on everything based on this lack of language in the class for felony obstructing justice. Well, let me, I guess, address the first part of the question. Kassler was a substantive change in the law. So that change occurred well before this trial. So, yes, there wasn't a subsequent case that said, OK, now we have to change the IPIs. It wasn't until last year, I don't know why, that the committee finally made the change saying Kassler now requires this change. So back to the question, because of that, because of that claimed error, even if we found it to be error, you're saying this has to go back for a remand for a new trial on the murder and the attempt murder? Yes, because – OK. That's the only answer I needed. Thank you. Go ahead. Yes. Well, if there aren't any further questions on issue one, I will talk about issue two. Did defense counsel object to the instruction that was given? Defense counsel did not. And as I argued in the briefs, it was ineffective because, as I said, Kassler had been on the books for years at that point. OK. Issue two concerns the question of prejudicial other bad acts evidence. An important thing in this issue is to delineate what evidence could have properly gotten in and then kind of what was the superfluous excess evidence to kind of push this over the edge. By stacking together all these pieces of evidence related to the co-defendants possessing all these different guns and then trying to connect it to basically innocent behavior on Mr. Johnson's part, that turned it from one kind of into improper bad character evidence. Because the only connection to Mr. Johnson is a picture of him standing there with the co-defendant wearing a fanny pack, which by all accounts is completely innocent behavior. But then that connection was then used with all this other evidence of guns, which may not have any bearing on the case. It's just they're just guns that the co-defendant happened to have, was then used to establish the character which the state argued in its closing. And the closing argument, the state made an argument that essentially amounted to he likes this certain kind of gun. That was a type of gun used in the shooting. Therefore, make the connection, which is an attack on character saying, OK, you like certain kind of things. You possess certain kind of things. Therefore, that must mean you did the crime. I thought it was admitted for opportunity, plan, intent, preparation, identity and knowledge. Sorry, can you ask that again? It's for opportunity. I thought it was admitted for opportunity, plan, intent, preparation, identity and knowledge. Yes, that was the intent. It was not character. I agree. That was not the purpose of why it was admitted. I was saying it was used as an attack on character, and the connection to Mr. Johnson was completely tenuous. With this logic, any other crimes evidenced to establish opportunity, plan, intent, preparation, identity or knowledge is an attack on character. Well, no, because I don't think it was improper for them necessarily to admit evidence of the same – a gun that was a Glock that had the same caliber that was used in the offense. I don't think that's an issue to say, look, he had the opportunity because he owned this kind of Glock. The problem then is that they went beyond that. They said, look, he owns all these kind of guns. He has a certain kind of character, which is he loves Glocks. And hey, look at this case. There are multiple Glocks in this case. So he must have been the one to do it. And additionally, look at this photo we have of Mr. Johnson standing next to him doing something completely innocent. There must be this connection. Therefore, that character also extends to Mr. Johnson. And he must also have the same propensity and the same – as you were saying, he must have also had the same opportunity because this character transfers over. The argument wasn't limited to, look, he has these specific guns. These guns are the ones that could have been used in the crime. It kind of – it went a step beyond that. And that kind of also goes to the question of the prejudicial versus probative analysis, which is that if it was needed to show opportunity, they had other ways to prove that already. They didn't need to stack on kind of the additional potentially prejudicial pieces of evidence to reach that point. Like they could have shown association. You get to direct how the state tries their case. If you don't like the way they try it. I mean in this specific instance, it's a question of whether it's prejudicial. So it's fine. So you're selecting what evidence they should use and not use. Right, because one piece of evidence that I don't think is prejudicial based on its connection to being a possible – it is the same caliber of weapon. It shows the opportunity. It actually shows the opportunity, the availability, the possibility of the crime being committed by that weapon. The other ones are just, hey, let's stack on more guns. So the jury thinks that this guy really loves guns, so he must have done the shooting, which is basically the tenor of the argument. There was no other evidence presented of the relationship between the defendant and the felon? Yeah, there was. The shooting, after the shooting.  There was no other evidence than just – No, no, no. There was, which is my point to the prejudicial versus probative that it wasn't needed to show that relationship. Like this additional evidence was not needed to establish the relationship or to establish these facts. Even in the specific case of – I'm always amused when the defense counsel is telling us what the state needed or didn't need. I guess I don't follow, Your Honor. I mean you said that there was the other evidence, so I'll agree with you. You telling us what the state should or shouldn't be presenting as far as the quantity of their evidence is kind of rich actually. Your Honor, it's a question of when it crosses the line into being prejudicial. It's a whole different question. You were saying, well, they had all this other evidence, and so it's up to the four of them which evidence they should use. Well, no. I was saying that that goes to the prejudice versus probative analysis, which is they had other evidence. There was substantial other evidence that established the same thing, so that diminishes the claim that this evidence by itself somehow stands out as prejudicial. My point is that they had the ability to establish these other facts. Why was it then necessary to have the slew of evidence saying, okay, look, he has a character towards a certain kind of firearm. He has a character and personality and desire towards these firearms, and then argue that in the closing. Sorry. In the closing, there was an argument about his – basically his love of the Glock weapons as an argument to the propensity to do it. So I think that that is the step beyond. Yes, he could have said, look, here's a photo. This is the same firearm of weapon that was used in this crime. That means he had the opportunity. But then to take it a step further and say, okay, look, he loves this certain kind of firearm. Look, those are the firearms used in this case, so therefore, that's kind of a character attack. That character attack was then transferred in this motion by, again, this completely innocent piece of evidence, which is Johnson standing next to him. The way that that piece of evidence came in was he was wearing a fanny pack, and the state argued in the motion that a fanny pack means he must have had a gun in there. When, you know, again, there's no evidence to prove that he had a gun in there. There was no argument to support it. It was kind of just an assertion. So that's why I'm saying when doing the prejudice versus probative analysis, what was – if there is all this other evidence that establishes that, why do we need to allow this additional evidence and this additional argument based on character? Let's just cut it off and allow the proper evidence to come in, and then there won't be this issue. Apologies. But if there are no further questions on that issue, I will talk about the sentencing issue, issue number five. Sorry. The question here is – there are really, I think, two questions that the court has to decide with this issue. In determining the aggregate length of the consecutive sentences, does the extended term count as part of it? And then does the firearm add-on count when we're determining the maximum term? Unfortunately, there's some ambiguity right at the moment. It's not completely clear, because the statute points to the other statute, which defines the terms that are authorized. That statute, of course, has both the extended and the non-extended term in there. Mr. Johnson was not extended term eligible. So our argument is that, based on Apprendi, based on the statute, given that there was no facts presented to the jury that would have allowed them to determine, OK, was he extended term, it would be improper to base the range of the possible sentence on, OK, an extended term sentence which he was not even eligible for. Furthermore, there is an unpublished case talking about the firearms add-on, which is People v. Higgs. That's a Fifth District unpublished case. And the analysis of that case looked to the text of the statute, did basic statutory analysis, which was the statute that we are using to determine what is the term, it doesn't make any mention of the add-on. It doesn't say look to an add-on. So based on that, just applying the statute, look to the term that's in the statute. I would argue this court should do the same thing. Look to the term that's in the statute and apply the term that actually applies to Mr. Johnson. Apply the term that he was actually eligible for, he actually could have gotten. Don't extend the term on a sentence which he was never eligible for in order to allow potentially higher sentences. I'm sorry, there was a bit of echo there. Was that a question or was that just my voice echoed off somebody? Let me hear your counsel. OK, I apologize. Well, I'll say that if your honors have no further questions, I would again ask for you to remand for a new trial on issues one or two. Of course, issue three concerns counsel of choice, which I didn't talk about, but that would require a remand for the potential appointment post-trial of the new attorney. Issue four would be an appointment for Krenkel. And of course, issue five, I'm arguing for a reduction in the sentence. Thank you. Thank you. You'll have an opportunity. Thank you. Mr. Thank you, your honors. I'll address counsel's arguments in the order in which he made them, starting with the argument regarding jury instructions. I think in this case, it's significant that this is being raised through the lens of plain error and ineffective assistance of counsel, especially in light of the kinds of arguments that are being made here at oral argument that are being focused on, especially related to this new pattern jury instruction. This is not something that existed at the time of of the trial back in twenty twenty four. This is something that is counsel stated arose in the past year. And so when we're when your honors are assessing whether or not this is a plain error, I think the law is quite clear that for something to be a clear, obvious error, it has to be substantiated by settled law. The fact that this instruction came out later shouldn't be to the defendant's benefit. It's something that shows that this was not a settled issue at the time. And eventually the Supreme Court did settle it with that that instruction. For the same reason, they would not be able to show deficient performance. Counsel can't be objectively unreasonable for failing to make an argument based upon an instruction that would come out a year later. So for both of those reasons, this court should conclude that that that later I.P.I. instruction doesn't provide any benefit to the defense. The the court in CASA, I think, is your honor. The arm and said it didn't say that in all cases going forward, the I.P.I. instruction should be modified to include this additional language. In fact, they weren't really discussing the propriety of the instructions at all when they were discussing changed instructions. What they're discussing was, is this an argument that excuse me? Is this a situation in which after we remand or they're they're essentially going to be barred from going forward on this charge due to double jeopardy? And so they're looking at the state of the instructions, the state of the law, and determining whether or not there was some kind of trade law that would justify a retrial. They ultimately concluded that there was. But the the fact that they discussed in that context means that it's it's not this wasn't an issue that they're addressing head on. I would say that at best it was dicta related to an unrelated issue. And they certainly made no clear statement that in every case dealing with obstruction, that these instructions must be modified to include the material impediment. And I think the evidence of this is clear with the cases that I cited in my brief. And although these related to a different kind of obstruction charge, both Kessler and Baskerville cases from our Illinois Supreme Court indicated that these two kinds of statutes are very closely related. They described them both as obstruction statutes, and courts have recognized that the obstruction language is what includes that material impediment element. There's no reason why material impediment or obstruction should be construed differently for 31 dash 1 versus 31 dash 4. They use the same language for obstruction, and the same definitions should apply in the same requirements for the jury instructions for that particular part of those charges should likewise apply. And again, for the same reasons, even if an argument might sound convincing now at the time that the arguments were being made at the time that these lawyers were going over this case in preparation for trial. There's no indication that counsel should have looked at the state of the law and said, objectively, I would be unreasonable for not to request a modified jury instruction. All of these cases that related to obstructing a police officer were quite clear at the time that the material impediment language was not required. For that reason, this court should can excuse me. Is there a clear in my throat? Sorry, apologies for those reasons, your honor, we would ask that you find no plain error and no ineffective assistance of counsel. There are no other questions on that issue. I'll turn to issue number 2 regarding the bad acts argument. The simplest reason why this court should reject this argument is because the bad acts simply do not pertain to this defendant. The courts have noted that the concern about bad acts is particularly great when it involves the person who's actually in jeopardy. And here, certainly, the codefendant might have other arguments that he may raise in his in his appeal related to the kinds of evidence are introduced against him and what they might or might not have shown about his character. None of that reflects on this defendant. This defendant was somebody who was associated with that codefendant. And that's what the evidence showed. But all of the evidence doesn't shows him doing no criminal activity whatsoever in the images that they're discussing. It's all related to that codefendant. And in the image in which they are together, he is doing essentially completely innocuous things. And so the the notion that a jury would. Isn't that Mr. Wallenstein's point that this behavior questionable, criminal or otherwise is being engaged in by. His associate is being used basically to color the defendant. Well, I, I would argue that the the way that the evidence bore out, it was not being used in that way. What it was instead being used for is to show that the defendant through his codefendant had access to firearms and more importantly, had this ongoing relationship with the codefendant. And so the while it is possible that the jury could have used it for an improper purpose, purpose is never any guarantee that a juror won't do that. The court admitted it for the limited purpose of showing this kind of access and opportunity. And so based upon the fact that it was admitted for this limited purpose and the fact that the danger of it being used unfairly against the defendant is reduced by the fact that he wasn't actually the person doing the claimed bad acts of possessing all these firearms or doing other things. The danger that is unfortunately always present that a juror is going to essentially disregard the judge's orders and use it for an improper purpose, that's dramatically reduced in this circumstance. And I would argue that based upon that, there is a very low likelihood that the jury would have used in this improper way. Was there a limiting instruction given as the evidence was being introduced? I apologize. I would have to double check the record to know the answer to that question for sure. Or whether counsel requested limiting instruction. Yeah, I apologize. I would have to double check the record. And if your honor would like, I certainly could do that.  Yeah, what is clear in my mind is the when the order was given following those arguments, it was admitted for the limited purposes, which we've described. And for that reason, your honors, I would argue that the risk of prejudice to this defendant was relatively minimal. And this court should conclude that the trial court didn't abuse its discretion by admitting the evidence for that purpose. And so this court should reject that argument as well. Unless there are any further questions on that issue, I'll turn to the 5th issue raised by by counsel. Whether the defendant sentence comply with the law. The only case which the defendant sites that supports his position came out after the sentencing was completed in this case. And again, the reason why that's significant is because of the lack of preservation of this issue in the trial court. There was nothing in the settle law that would have indicated to counsel that this is something that should be objected to. And there's certainly nothing that the court would have been aware of that would have indicated to the to the court that that something was amiss here. In fact, in my brief, I cite numerous cases in which through essentially a long standing. A line of cases going back to prior versions of the statute at issue courts have interpreted the statute as including extended term penalties in the calculation of what the aggregate maximum sentence should be. Even if that extended term sentence would not apply to the actual defendant at issue. And so counsel certainly has made arguments as to why that should not apply. But the fact remains the status of the law at the time of the sentencing would not have made it clear to anybody, the court or counsel that the sentence would have been wrong. And it certainly would not have. There was no objective standard that counsel would have violated by failing to raise an objection at sentencing. I would certainly argue as well that the case law is correct. It says that even when extended term sentences are not applicable to this defendant, that those should be included in that maximum calculation. And I would argue that nothing about this new unpublished case, which said that it did not uncover anything on point for this issue. But, in fact, there is all of this case law out there that it left on analyzed. I would argue that that case was perhaps decided in the way that in which it was decided due to not finding those cases and and should not be followed by this court. And for all of those reasons, your honors, I would ask this court affirm the trial court. If there are no further questions, I will simply stand on my brief as written for the remainder and thank you for your time. Thank you, counsel. Mr. Wallenstein. Thank you, your honor. So on issue 1, the law was settled in 2020. In 2020, the law was settled when Castle was issued and very clearly said that the materially interferes with the administration of justice element that applies to the other. The whole statue that applies to all of a one. Further, that was an extension of an already existing case, which was the same offense that Mr. Johnson was charged with. So there was already a Supreme Court case that had already said that this was an essential element. And then a counselor came on and made it very clear that that is now going to extend to the entirety of the statute. And in Kassler, the court has a discussion about what is going to happen on remand. And the court says the jury instructions are going to change because it would be improper for the trial court on remand to give an instruction does not include all the essential elements. In this case, Kassler had been decided since 2020. The court proceeded to give instructions that did not include an essential element. That was a known essential element. There are two Supreme Court cases that established that. Counsel should have done minimal research and found out that there is a Supreme Court case on the statute that applies to the defendant's case. Given that Kassler is very clear, defense counsel should have said to the court, Your Honor, the state has to prove this element. That was an element that was not proven at trial. It is very similar to the instance of Kassler where the court discusses that the state was unaware that they had to prove this element. So that's why double jeopardy doesn't apply. The only issue is this was not a new announcement of law. Kassler had already been announced as law. The change in the jury instructions just confirmed to us that, yes, the jury instructions needed to be modified. The jury instructions themselves are not what controls. What controls is the instructions need to cover all the essential elements. If an instruction fails to include an essential element, it would violate a defendant's right to a fair trial because the state is not required to prove to the jury all the elements in the case. I'll also say the changing of the instructions, again, I'll say that is not what settled this issue. I'll also say the Supreme Court did not change instruction. It was the jury instruction committee. The Supreme Court settled the issue by issuing Kassler, which said this is now the new law. That means that after that law changed, all future trials must now, in order for the state to prove a defendant guilty, this is now an element that must be proven. That applies to all trials after Kassler. Now, there was some discussion about the other obstruction of a peace officer, the case to deal with that. The reason that none of those cases apply is that the Supreme Court ruled in Fomage and Kassler, this applies to this element. This applies to this statute. That is why it doesn't apply. It only applies to 720 ILCS 531 A1. It does not apply to any of the other parts of obstruction. These rulings are limited to this statute, which happens to be the statute that, of course, that Mr. Johnson was prosecuted under. That's why we're not talking about obstruction of justice of a peace officer or anything else. It's limited to this, and they required this element. If you actually look at the new instruction of 2219 and 2220, you'll see that there are other versions of obstruction of justice that are not covered by A1 that don't have the materiality in them. The instructions just say the offense because, for one reason or another, materiality may not make sense. It doesn't apply in that case. So it was clear and obvious that at the time of trial, this was an element of the offense. Thus, the court and counsel should have been aware of that, and the instruction should have reflected that. As to issue two, the bad acts do pertain to Mr. Johnson because they were in a joint trial. They were co-defendants in a joint trial. All the attacks on his co-defendant's character, if they were improper and prejudicial, were extended to him. Furthermore, those attacks on character were tied up in a bow by also including this completely innocent behavior that was basically totally irrelevant. A picture of the co-defendant standing wearing a fanny pack with Mr. Johnson has nothing to do with the facts of the case. It was just used to connect these series of firearm evidence in the character attack to Mr. Johnson. I'll also say it wasn't limited to the purposes that it was supposed to be brought in for because, as I said, the state in its closing arguments pushed it beyond that point. It started making arguments about what the co-defendant loved. He loved this certain kind of gun. Therefore, he must be more likely to be the shooter. That pushes it beyond just, okay, it's an opportunity. He could have passed the firearm. Sorry, could you ask that again? Finish your thought. I said it shouldn't be limited to those purposes and that, therefore, it was prejudicial and that revenge should be required. All right. Thank you for your arguments, counsel. The court will take this matter under advisement. The court stands in recess.